05-6887-cv
DSI Assoc. LLC v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: November 15, 2006          Decided: August 2, 2007)

Docket No. 05-6887-cv

---------------------------------------

DSI ASSOCIATES LLC,

Movant-Appellant,

- v -

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

ALLEGHENY ENERGY, INC., ALLEGHENY ENERGY SUPPLY COMPANY, LLC,
MERRILL LYNCH & CO., and MERRILL LYNCH CAPITAL SERVICES, INC.,

Interested-Party-Appellees.

DANIEL L. GORDON,

Defendant.

---------------------------------------

Before:   McLAUGHLIN and SACK, Circuit Judges, and RAKOFF,
          District Judge*.

Appeal from an order of the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge) denying a motion to intervene brought by movant-appellant DSI Associates under Federal Rule of Civil Procedure 24 to

---

* The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

contest a portion of the forfeiture order that was included in the defendant's sentence.

Affirmed.

DAVID J. MONZ, Updike, Kelly & Spellacy, P.C. (Barbara A. Frederick, of counsel) Hartford, CT, for Movant-Appellant.

BARBARA A. WARD, Assistant United States Attorney for the Southern District of New York (Michael J. Garcia, United States Attorney, and Katherine Polk Failla, Assistant United States Attorney, of counsel), New York, NY, for Plaintiff-Appellee.

JOHN GUELI, Shearman & Sterling LLP (Stuart J. Baskin and Ladan F. Stewart, of counsel), New York, NY, for Interested-Party-Appellees Merrill Lynch & Co. and Merrill Lynch Capital Services, Inc.

SACK, Circuit Judge:

To resolve this appeal, we must determine whether a general creditor may intervene in a criminal forfeiture proceeding to assert its alleged rights to property subject to a criminal order of forfeiture or challenge the underlying validity of the forfeiture order, and if so, how.

## BACKGROUND

On December 19, 2003, the defendant, Daniel L. Gordon, pled guilty in the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge) to three counts of an information (the "Information") charging him with undertaking an elaborate scheme to defraud his employer, Merrill Lynch Capital Services, Inc., and Merrill Lynch & Co. (collectively

-2-

"Merrill Lynch") of many millions of dollars.  Count One charged him with wire fraud in violation of 18 U.S.C. § 1343.  Count Two charged him with laundering the proceeds of the wire fraud in violation of 18 U.S.C. § 1956(a)(1)(B)(I).  And Count Three charged him with conspiring to falsify Merrill Lynch's books and records in connection with the sale of its energy trading unit, Global Energy Markets ("GEM"), in violation of 18 U.S.C. § 371.[1]  The Information also included "forfeiture allegations" relating to the fraudulently obtained money.

According to the Information, in or before 2000, Merrill Lynch entered into a $500 million long-term energy call agreement with the Williams Energy Marketing and Trading Company.  Merrill Lynch sought insurance to hedge against that obligation.  In response, Gordon used an entity he had created and operated, Falcon Energy Holdings, S.A. ("Falcon"), to negotiate a fraudulent energy insurance contract with Merrill Lynch.  On or about August 25, 2000, Merrill Lynch entered into the purported 11-year energy insurance agreement with Falcon, transferring approximately $43 million, its only payment pursuant to that agreement, to Falcon's bank account, which Gordon had opened for it in Switzerland.[2]

---

[1]  Gordon had created GEM for Merrill Lynch in or about 1998, and thereafter had acted as its president.

[2]  According to the Information, on or about January 8, 2001, Allegheny Energy Services Corporation ("AES") acquired GEM from Merrill Lynch and formed a new entity called Allegheny Energy Supply Company, LLP ("Allegheny").  Gordon served as the president of Allegheny from the company's inception until about

At about the same time, Gordon incorporated Ostrich Capital Partners, Inc. ("Ostrich"), in the Marshall Islands. On or about September 21, 2000, Gordon transferred approximately $33 million from the Falcon account in Switzerland to an Ostrich account at the same bank. Gordon subsequently made several additional transfers from the Falcon account to accounts in the United States, including a total of $30 million to a bank account in New York in the name of Kings Holdings, LLC ("Kings Holdings"), a Delaware corporation, all the outstanding shares of which Gordon owned. These transfers underlie the money laundering charge against Gordon.

On or about November 14, 2000, Gordon used funds from Kings Holdings' New York bank account to purchase from the appellant DSI Associates LLC ("DSI") seventy percent of the outstanding shares of Daticon, Inc. ("Daticon"), a private document-management services company located in Connecticut. Kings Holdings acquired 7,923 of the 11,318 outstanding shares of Daticon from DSI for nearly $23 million in cash and an unsecured promissory note of $4 million. Gordon became chairman of Daticon's board of directors and received a salary and other income from the company from sometime in 2000 to sometime in 2002. DSI continued to hold thirty percent of Daticon's outstanding shares.

The Criminal Investigation and the Promissory Note

September 2002, shortly after Gordon terminated the Falcon contract.

-4-

After learning of Gordon's scheme, representatives of the United States Attorney's office in Manhattan negotiated with representatives of DSI with a view toward finding a neutral third party to purchase all the shares of Daticon -- those held by Kings Holdings and those held by DSI. The government intended to seize Kings Holdings' portion of the proceeds in a forfeiture proceeding as part of its planned criminal prosecution of Gordon.

On July 18, 2003, while negotiations with the government were proceeding, DSI filed suit against Kings Holdings and Gordon in Connecticut state court. DSI alleged that the two had defaulted on the unsecured promissory note that was a part of the consideration they paid to DSI for the Daticon stock. At the same time, DSI sought and received an ex parte prejudgment attachment on $5 million worth of Kings Holdings' assets.

On August 6, 2003, DSI and Kings Holdings settled their dispute and terminated the Connecticut proceedings. Under the settlement, the prejudgment attachment was vacated and in its place Kings Holdings executed a non-negotiable, unsecured demand promissory note for $2.5 million (the "Settlement Note" or the "Note"). The settlement agreement provided that the Settlement Note could be enforced by a claim against the proceeds of a sale of Daticon, except in the event that the government placed any such proceeds in an escrow account or initiated a forfeiture proceeding against Kings Holdings. The parties had received notice from the government, however, that it intended to initiate

-5-

forfeiture proceedings that would include any Daticon sale proceeds. They therefore agreed that if DSI attempted to collect on the Settlement Note from the proceeds of the sale of Daticon after such a proceeding had been initiated, it would do so within the "context of" the criminal forfeiture proceeding unless the United States Attorney for the Southern District of New York "consented to any other means of collection." Letter Agreement dated Aug. 6, 2003, at 1.

In September 2003, pursuant to an arrangement with the government, Kings Holdings and DSI sold their shares of Daticon to a neutral third party[3] with the active monitoring and approval of the government. Approximately $22.9 million of the sale proceeds were immediately placed in a government account pending forfeiture proceedings. Approximately $6.5 million of the proceeds were deposited in an escrow account (the "Escrow Account"), to be held there until the end of the following year, to provide for post-acquisition contingencies specified in the purchase agreement, which primarily related to the anonymous third-party purchaser. The remaining $6 million was transferred into a separate escrow account (the "Separate Escrow Account") until December 26, 2003, to be available in the event that post-acquisition challenges arose relating to Gordon's ownership and control of Kings Holdings. If no challenges were made by that

---

[3] The third party is not, to our knowledge, identified in the material submitted to us on appeal.

date, the money would be transferred from the Separate Escrow Account to a government account awaiting forfeiture.

On October 15, 2003, after making a demand for payment in full of the Settlement Note, DSI filed another complaint in Connecticut state court based on the Note. DSI applied to the court for a second ex parte prejudgment attachment order against the sale proceeds that had been put into escrow funds in the amount of $2.5 million, plus interest. That day, the Connecticut court entered a prejudgment attachment for $2.5 million against the Separate Escrow Account.[4] On December 26, 2003, when no claims other than those embodied in the court's attachment order on the $6 million Separate Escrow Account funds had been made, that amount less the $2.5 million that remained the subject of the prejudgment attachment was paid into the government account. The $2.5 million apparently remains in the Separate Escrow Account.

### Gordon's Guilty Plea, Forfeiture, and Ancillary Proceedings

Meanwhile, on December 19, 2003, Gordon pled guilty to all three charges contained in the Information. Pursuant to a written plea agreement, he agreed to forfeit the $43 million he

---

[4] Although the record reveals that the prejudgment attachment order was in the amount of $2.75 million, the district court and the government treated the attachment as one for $2.5 million. See Preliminary Order of Forfeiture, dated Feb. 9, 2004, at *4, Final Order of Forfeiture, dated Oct. 24, 2005, at *4. Because $2.5 million remains in the Separate Escrow Account and no party challenges the propriety of that amount, we, too, assume that $2.5 million is the proper amount subject to the state court attachment.

initially received pursuant to the fraudulent scheme, as well as any interest in property derived from proceeds traceable to the wire fraud offense or involved in the money laundering offense. On February 20, 2004, as part of Gordon's sentence, the district court entered a Preliminary Order of Forfeiture requiring the defendant to forfeit $43 million and any right, title, and interest in specific property described in the Preliminary Order.

Title 21 U.S.C. §§ 853(n)(1) and (2) set forth the procedure for asserting, in an ancillary proceeding, a third-party claim with respect to property subject to a criminal order of forfeiture:

> (1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. . . .

21 U.S.C. § 853(n)(1), (2).

Pursuant to section 853(n)(1), the government sent notice to counsel for Merrill Lynch, Allegheny, and DSI, as "person[s] known to have alleged an interest in the property that is the order of forfeiture."  21 U.S.C. § 853(n)(1).  Under the statute, the recipients of the notice had thirty days in which to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  Id. § 853(n)(2).

The substantive portion of section 853(n) provides:

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good

-9-

title to any subsequent purchaser or transferee.

Id. § 853(n)(6),(7).

Merrill Lynch and Allegheny filed timely petitions in response to the section 853(n) notice, asserting a prior superior interest in some of the forfeited property. See id. § 853(n)(6)(A). On June 10, 2005, the district court endorsed a Stipulation and Order of Settlement that provided for Merrill Lynch and Allegheny to split the final amount forfeited -- except for $10 million to be kept by the government[5] -- in return for the withdrawal of their petitions. The stipulation also provided that Merrill Lynch and Allegheny would divide equally the $2.5 million that remained in escrow pending resolution of the Connecticut state court proceeding if and when those funds were transferred from the Separate Escrow Account into the government account.

On October 24, 2005, the district court sentenced Gordon to 42 months' incarceration and entered a Final Order of Forfeiture.

### DSI's Motion to Intervene

---

[5] The government kept $5 million in cash and held an additional $5 million, which it had permitted Gordon's wife to pay to it in exchange for title to a condominium that had been subject to forfeiture.

On September 29, 2004, more than five months after the thirty days in which to petition for relief under section 853(n) had elapsed, DSI moved to intervene in Gordon's criminal forfeiture proceeding pursuant to Rule 24 of the Federal Rules of Civil Procedure. DSI proffered two principal arguments in support of its motion: (1) the original $4 million promissory note used by Kings Holdings as consideration for the Daticon shares (subsequently reduced to the Settlement Note) was not tainted by the fraudulent scheme and therefore could not be forfeited because the district court did not have jurisdiction over the proceeds derived from, or traceable to, the equivalent proportion of Daticon stock;[6] and (2) the district court did not have authority to enter an order forfeiting to the United States property that was the subject of the Connecticut court attachment. DSI conceded, however, that it was statutorily barred from intervening in the criminal proceeding under the terms of 21 U.S.C. § 853(k), which provides that, except as set forth in section 853(n), no party claiming an interest in property subject to forfeiture under section 853 may intervene in a trial or appeal of a criminal case involving such forfeiture, or bring an action against the government concerning the validity

---

[6] As the district court phrased it, "DSI[] claims that because the promissory note was separate from the proceeds of Gordon's criminal activities, only the proceeds of the sale of 85% of Kings's Daticon shares . . . are forfeitable, and the proceeds of the sale of Kings's remaining 'untainted' shares remain available to satisfy DSI's claim against Kings." United States v. Gordon, 2005 WL 2759845, at *1, 2005 U.S. Dist. LEXIS 24897, at *3-*4 (S.D.N.Y. Oct. 13, 2005).

-11-

of the party's alleged interest in the property, after an indictment or information alleging that the property is subject to such forfeiture has been filed.[7] DSI further conceded that, as a general unsecured creditor, it did not have standing to petition the court through the ancillary proceeding provided for in section 853(n).

The district court addressed the merits of the motion and denied it. First, it observed that despite the fact that Kings Holdings paid for the Daticon shares with approximately $23 million in cash that was traceable to the defendant's criminal conduct and a $4 million promissory note, DSI received all of the Daticon shares due to it and therefore retained "no legally[] cognizable interest in any portion of the [Daticon] shares," or the proceeds thereof, because it was, as it readily admitted, a general creditor with no specific claim on any of the forfeited

[7] Section 853(k) states in full:

Except as provided in subsection (n) ["Third Party Interests"], no party claiming an interest in property subject to forfeiture under this section may--

(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k).

-12-

property.  United States v. Gordon, 2005 WL 2759845, at *2-*3, 2005 U.S. Dist. LEXIS 24897, at *7 (S.D.N.Y. Oct. 13, 2005).  As a general creditor, and as DSI and the government agreed, DSI did not have standing to initiate a section 853(n) proceeding to protect their interests.

Second, the district court pointed out that although the Fifth Amendment's Due Process Clause requires that any person who claims a legal interest in property subject to forfeiture receive notice and an opportunity to be heard, due process does not require "that persons claiming merely that they would be advantaged in some way if the defendant were allowed to keep more of his assets should be allowed to intervene to object to the forfeitability of assets admittedly belonging to the defendant."  Id. at *3, 2005 U.S. Dist. LEXIS 24897, at *8.  Assuming without deciding that Federal Rule of Civil Procedure 24 was applicable to Gordon's criminal proceeding, the district court therefore concluded that DSI "ha[d] no right to intervene under Rule 24(a) [of the Federal Rules of Civil Procedure], section 853(n), or any other provision of law."  Id., 2005 U.S. Dist. LEXIS 24897, at *8-*9.

Third, the district court also denied DSI permissive intervention under Rule 24(b), concluding that such intervention would constitute an unwarranted interference in the "expeditious . . . adjustment of rights as between the defendant and the Government," which lies at the core of the criminal

forfeiture provisions. Id., 2005 U.S. Dist. LEXIS 24897, at *8-*9.

Finally, the district court observed that DSI's motion to intervene was not its only recourse in pursuing satisfaction of the Settlement Note. Section 853(i) confers broad discretion on the Attorney General to take any action "to protect the rights of innocent persons which is in the interest of justice." Id., 2005 U.S. Dist. LEXIS 24897, at *10 (quoting 21 U.S.C. § 853(i)(1)) (emphasis and internal quotation marks deleted). The district court further noted that the government had specifically invited DSI to pursue such discretionary relief. Id., 2005 U.S. Dist. LEXIS 24897, at *10.

DSI appeals.

**DISCUSSION**

On appeal DSI argues that it has standing to intervene under Rule 24 of the Federal Rules of Civil Procedure. It contends that the district court exceeded its statutory forfeiture authority by including the untainted portion of the proceeds of the Daticon stock sale in the forfeited property. It further argues that to the extent that section 853(n) ancillary proceedings provide the exclusive means of pursuing its interest in the proceeds of the Daticon stock sale, the statute violates the Due Process Clause of the Fifth Amendment of the Constitution.[8]

---

[8] The district court found, and DSI does not dispute, that DSI's original petition to the district court was untimely in light of the thirty-day limit provided by 21 U.S.C. § 853(n).

-14-

## I. Standard of Review

We review the denial of a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure, whether as of right under Rule 24(a) or by permission under Rule 24(b), for abuse of discretion. See In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000). "Errors of law or fact may constitute such abuse." SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 81 (2d Cir. 2000). We review de novo whether a party has standing to petition the district court for a hearing under 21 U.S.C. § 853(n), and, of course, all questions of statutory interpretation.[9] United States v. Ribadeneira, 105 F.3d 833, 834 (2d Cir. 1997) (per curiam).

## II. DSI's Motion to Intervene under Rule 24

---

Gordon, 2005 WL 2759845, at *2, 2005 U.S. Dist. LEXIS 24897, at *5-*6. The district court noted that other courts "have stated that such failure constitutes waiver of a party's right to assert an interest in forfeited property," id. at *2, 2005 U.S. Dist. LEXIS 24897, at *5, but did not rely on the untimeliness in denying the motion, see Fed. R. Crim. P. 32.2 Advisory Committee Notes, subdivision (c) ("[I]f a third party has notice of the forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture."). The government does not argue on appeal that DSI's untimely petition acts as a waiver of its right to intervene. "Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006) (quoting Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998)) (internal quotation marks omitted).

[9] Our case law, and that of other circuits, generally characterizes our inquiry as one that determines whether a third party has "standing" to initiate an ancillary proceeding under section 853(n), and we use the term here accordingly. That inquiry, however, appears to be identical to one "on the merits" to determine whether a third party meets the statute's requirements.

-15-

## A. Title 21 U.S.C. § 853

### 1. Section 853 is the Exclusive Means for Third Parties to Intervene in Forfeiture Proceedings.

It is well established that third parties may not intervene during criminal forfeiture proceedings to assert their interests in the property being forfeited. See 21 U.S.C. § 853(k);[10] United States v. McHan, 345 F.3d 262, 269 (4th Cir. 2003) (observing that section 853 "provides that, until this sentence of forfeiture is entered, no party claiming an interest in the forfeited property may intervene in the criminal case"); see also United States v. Gilbert, 244 F.3d 888, 910 (11th Cir. 2001) ("By specifically barring third-parties from intervening in the criminal trial [through the analogous Racketeer Influenced and Corrupt Organizations Law ("RICO") provision], 18 U.S.C. § 1963(k), it is clear that Congress intended section 1963(l) proceedings to provide the exclusive means for third-parties to assert their claims to forfeited property.").[11] Rule 32.2 of the Federal Rules of Criminal Procedure, which pertains to procedures related to criminal forfeiture, also prohibits a third party from "object[ing] to [a] final [forfeiture] order on the ground that

---

[10]  See supra note 7.

[11]  In Ribadeneira, we concluded that the two criminal forfeiture provisions, 18 U.S.C. § 1963 (forfeiture under RICO, 18 U.S.C. § 1962), and 21 U.S.C. § 853 (other criminal forfeitures) "are so similar in legislative history and in plain language as to warrant similar interpretation." Ribadeneira, 105 F.3d at 835 n.2.

-16-

the third party had an interest in the property."  Fed. R. Crim. P. 32.2(c)(2).

It is similarly well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets -- after the preliminary forfeiture order has been entered.  We have recognized that

> [a]n ancillary proceeding [under § 853(n)] is evidently the only avenue for a post-indictment third-party claim to forfeited property, because the statutory scheme bars commencement of "an action at law or equity against the United States concerning the validity of [a third party's] alleged interest in the property . . . subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."

De Almeida v. United States, 459 F.3d 377, 381 (2d Cir. 2006) (quoting 21 U.S.C. § 853(k)) (alterations and emphasis in original); see also Libretti v. United States, 516 U.S. 29, 44 (1995) ("Once the government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to a return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n).").[12]

---

[12]  Our conclusion is shared by those of our sister Circuits that have addressed this question.  See United States v. Lazarenko, 476 F.3d 642, 648 (9th Cir. 2007) ("The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property."); United States v. Soreide, 461 F.3d 1351, 1354 (11th Cir. 2006) ("[U]nder 21 U.S.C. § 853(n)(6), third party petitioners can establish their interest in forfeited property in only two ways.") (internal quotation marks and citation omitted); United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) ("A § 853(n) ancillary proceeding is the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment alleging that the property is subject to forfeiture."); McHan, 345 F.3d at 269("The petition authorized

## 2. DSI Lacks Standing Under 21 U.S.C. § 853(n).

As the district court pointed out, "[w]hile DSI's claim derives from the purchase of the shares [of Daticon], as a matter of law, having failed to retain a security interest in the shares, DSI is simply a general creditor of Kings [Holdings], and its claim to any specific property Kings [Holdings] may possess is no greater than that of any other such creditor." Gordon, 2005 WL 2759845, at *3, 2005 U.S. Dist. LEXIS 24897, at *7. DSI does not assert otherwise. As a general creditor of Kings Holdings and Gordon, DSI does not possess a "legal right, title, or interest in the property" that was forfeited as required for standing under section 853(n)(6)(A), nor can it show that it was a bona fide purchaser for value of any such right, title or interest, as required for standing under section 853(b)(6)(B). See Ribadeneira, 105 F.3d at 836. Without possessing such an interest "in" a "particular, specific asset" that is, or is part

___

by § 853(n) is the exclusive avenue through which a third party may protect his interest in property that has been subject to a forfeiture order."); United States v. Wade, 255 F.3d 833, 837 (D.C. Cir. 2001) ("A third party's only avenue for protecting his interest is the procedure set forth in 21 U.S.C. § 853(n) . . . ."); United States v. Lavin, 942 F.2d 177, 187 (3rd Cir. 1991) (Becker, J.) ("Congress instead defined two rather limited categories of third parties who are entitled to petition the courts for a hearing to adjudicate the validity of their interests in the forfeited property."); United States v. De Ortiz, 910 F.2d 376, 383 (7th Cir. 1990) ("[O]nce the district judge had ordered the money forfeited . . ., the money remained subject to forfeiture unless and until that order was vacated and a § 853(n) hearing was held."); see also United States v. Harris, 246 F.3d 566, 574-75 (6th Cir. 2001) (quoting with approval the Third Circuit's approach in Lavin).

-18-

of, the forfeited property, DSI does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n).  Id. at 835-37; see also United States v. Schwimmer, 968 F.2d 1570, 1580-81 (2d Cir. 1992) (holding that general creditors lack standing under 18 U.S.C. § 1963(l)(6), the analogous forfeiture statute under RICO, 18 U.S.C. § 1962).

### 3. Rule 24 Does Not Provide an Alternative Means to Intervene.

DSI asserts, however, that it is not attempting to employ a section 853(n) petition here.  It is not looking to "recover an alleged interest in forfeited property," Ribadeneira, 105 F.3d at 834, i.e., in its alleged interest in the funds traceable to untainted shares of Daticon, for which section 853(n) would provide the proper mechanism.  Instead, DSI contends, its motion to intervene seeks to challenge the validity of the forfeiture order as it was applied to those funds.

DSI cannot prevail, however, by reframing its argument as one challenging the underlying validity of the forfeiture order rather than the district court's denial of its efforts to assert its property interest in the funds traceable to untainted shares of Daticon.  In either case, DSI is contending that the remaining funds owing under the Settlement Note belong to it, not Gordon.  And the argument that the district court does not have the authority to order those funds forfeited because they belong to DSI is effectively the same argument as an assertion that DSI has a superior interest in those funds.  Both are forbidden by section 853(k) unless they fall within the exception carved out

-19-

by section 853(n).[13]  See also Fed. R. Crim. P. 32.2 Advisory Committee Note ("Th[e ancillary] proceeding does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property.")  DSI's attempt to participate in the forfeiture proceeding is thus foreclosed by its acknowledged inability to meet the requirements of section 853(n).  It may not bypass this procedure by employing the Federal Rules of Civil Procedure, or, indeed, any other mechanism.[14]

B.  Due Process

---

[13]  DSI relies on United States v. Reckmeyer, 836 F.2d 200, 206, 208 (4th Cir. 1987) (commenting that "[s]erious due process questions would be raised . . . if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture" and therefore construing the ancillary proceeding "to provide a means by which third persons who raise challenges to the validity of the forfeiture order could have their claims adjudicated").  There, the Fourth Circuit determined that general creditors have a legal interest in the debtor's property, but that such creditors have standing under section 853(n) only if they can show a legal interest in the particular property subject to forfeiture.  Id. at 205-06.  But DSI does not assert that it has standing under section 853(n).  See also Ribadeneira, 105 F.3d at 836 n.4 ("We do not intend here to embrace the holding of Reckmeyer, which granted standing to unsecured creditors claiming under § 853 where all (as opposed to a part) of the assets of the debtor's estate have been forfeited.").

[14]  We therefore need not address whether a motion to intervene under the Federal Rules of Civil Procedure can ever be appropriate in a criminal proceeding.  See United States v. White, 980 F.2d 836, 845 (2d Cir. 1992) (Kearse, J., dissenting) ("Although the Federal Rules of Civil Procedure do not apply to a criminal proceeding of their own force, there is no jurisprudential reason why a promulgating body cannot adopt some of those rules for application to criminal proceedings." (referring to Fed. R. Crim. P. 49(d) as doing so)).

DSI contends that if, as we have here and elsewhere concluded, section 853(n) provides the exclusive means by which a third party can challenge a forfeiture order in court, yet DSI does not have standing to intervene under that section, DSI has been deprived of a property interest without a meaningful opportunity to be heard in violation of the Fifth Amendment's Due Process Clause; in other words, that the failure of section 853 to provide general creditors with such an opportunity to be heard renders the statutory scheme unconstitutional.[15] This argument depends on three premises: first, that DSI has a property interest at stake that is subject to the requirements of due process; second, that the forfeiture order deprives it of that property interest; and third, that the deprivation has been imposed without due process of law. As for the first, we assume without deciding that DSI, through its attachment under Connecticut law of the Settlement Note or otherwise, has a property interest sufficient for it to invoke the Due Process

---

[15] After oral argument, the government submitted a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure to bring to our attention the Ninth Circuit's opinion in United States v. Lazarenko, 469 F.3d 815, as amended, 476 F.3d 642 (9th Cir. 2007). There, a third party attempted to set an immediate hearing on the propriety of the forfeiture order and challenge the preliminary order of forfeiture prior to the commencement of an ancillary proceeding under section 853(n). The court determined, however, that the third party did not have standing to do so because it could not allege sufficient injury-in-fact, id. at 650, and because it asserted a premature generalized grievance, id. at 652. Here, however, the district court had conducted ancillary proceedings under section 853(n) at the time DSI filed its motion to intervene. And DSI appeals a judgment of the district court denying its motion. DSI therefore has satisfied the standing concerns deemed dispositive in Lazarenko.

-21-

Clause.[16]  As for the second, we conclude that, whether or not it does, DSI has not been deprived of any such property interest -- at least not yet.  We therefore do not reach the third question, whether, should the deprivation occur, it will violate the due process guaranty.[17]

Section 853(n) may be DSI's exclusive path to challenge the forfeiture order before the judicial entity which entered the order, but it is not DSI's only course of action available under the statute within which it may assert its interest in the forfeited property.  Under section 853(i), the Attorney General maintains discretion to "take any . . . action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section."  21 U.S.C. § 853(i)(1).  This non-judicial remedy confers upon the Attorney General the authority to rectify

---

[16]  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  While state law creates the underlying substantive interest the plaintiff seeks to vindicate, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) (citations omitted).

[17]  We therefore need not determine whether DSI actually received the required opportunity to be heard in the district court in this instance.  We note, however, that, notwithstanding its untimely motion, Judge Lynch permitted DSI to submit a brief in support of its argument and carefully considered the merits of DSI's contention.  That its challenge ultimately failed in this case is not a result of a deprivation of an opportunity to be heard by the district court.

precisely the situation presented here:  A third party that possesses an interest in forfeited property yet does not meet the standing requirements of section 853(n) may petition the Attorney General for redress in the "interest of justice."  As the Third Circuit explained:

> Congress did not intend section 853(n) to serve as a vehicle by which all innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief.  Rather, it seems to us that Congress, in enacting section 853(n)(6)(A) and (B), intended to accord standing to only two narrow classes of third parties, and intended to require all other third parties to petition the Attorney General for relief.

United States v. Lavin, 942 F.2d 177, 185 (3rd Cir. 1991) (citing 21 U.S.C. § 853(i)) (emphasis in original); see also United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1192 (D.C. Cir.), cert. denied sub nom. Chawla v. United States, 515 U.S. 1160 (1995) (concluding that the statutory scheme for RICO forfeiture proceedings "directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture").  Indeed, the District of Columbia Circuit has similarly noted that while section 853 was intended to provide certain third parties with additional due process protections, "general creditors seem precisely the type of innocent persons Congress had in mind" when it included the non-judicial mechanism set forth by section 853(i) "to protect the rights of innocent persons."  Id. at 1192 (quoting 18 U.S.C. § 1963(g)(1)) (internal quotation marks omitted).

As the district court rightly noted, DSI has not demonstrated that any such a request would be futile. Indeed, the government, which received $10 million from the forfeiture, specifically invited DSI to pursue this avenue of relief.

Perhaps at some future time DSI will be able to establish that it has exhausted all possible avenues for relief. If so, it might be able to argue persuasively that the availability of a remedy through the executive branch under section 853(i), and whatever other avenues it might pursue,[18] is

_____

[18] We note that DSI has failed to demonstrate that Gordon is without assets not subject to forfeiture that could satisfy the Note. Cf. Reckmeyer, 836 F.3d at 206 (noting that in that case, unlike this one, the parties had agreed that the forfeiture order seized all of the defendant's known assets). It is not clear to us that DSI, as a general creditor, is unable to pursue Gordon personally for the payment of the money associated with the Note.

And while the issue was not briefed to us, we further note that DSI has not demonstrated that there was a procedural bar preventing it from converting its inchoate interest in the form of a state court prejudgment attachment into a "legal interest" under section 853(n) by "obtain[ing] some judgment and secur[ing] . . . those funds." United States v. Schwimmer, 968 F.2d 1570, 1581 (2d Cir. 1992). Under Connecticut law, it appears that DSI might perfect the prejudgment attachment by obtaining a judgment lien on the property in which it claims to have an interest. See Hartford Provision Co. v. United States, 579 F.2d 7, 10 n.3 (2d Cir. 1978) (noting that Connecticut follows "ancient and well-accepted principles" relating to attachments on personal property, such that levying an attachment creates a lien of an inchoate nature which "awaits the judgment of the court for its consummation.") (quoting Pratt v. Law, 13 U.S. [456, 497] (1815)). If it did so, DSI would "no longer [be] merely a general creditor." Schwimmer, 968 F.2d at 1581. It might then have a security interest that would confer upon it standing to make a claim under section 853(n). See also Reckmeyer, 836 F.2d at 205 ("Unsecured creditors may reduce their claims to judgment and thereby acquire a lien on all of the debtor's assets. This enforcement mechanism provides for the judicial enforcement of a legally cognizable right."). Upon successful completion of perfecting a judgment in state court,

-24-

insufficient to satisfy the Due Process clause. But inasmuch as it has yet to demonstrate that it has finally been deprived of property, we need not determine whether any such deprivation would be constitutionally permissible.

**CONCLUSION**

We conclude that the district court acted within its discretion in denying DSI's motion to intervene, and that the denial did not violate the Fifth Amendment's Due Process Clause. The order of the district court is therefore affirmed.

---

DSI might then file a Rule 60(b) motion to reopen the ancillary forfeiture proceeding in the district court and litigate its claim as to its property interest within the statutory scheme created by Congress. See United States v. Puig, 419 F.3d 700, 702 (8th Cir. 2005) (citing Fed. R. Crim. P. 32.2(c) Advisory Committee Notes) (noting that a third-party claimant may file a Rule 60(b) motion to reopen the ancillary proceeding allowed by 21 U.S.C. § 853(n)).