United States Court of Appeals,

Eleventh Circuit.

No. 94-8621.

UNITED STATES of America, Plaintiff-Appellant,

v.

Robert E. DOUGLAS, Jr., Defendant-Appellee.

Noel LUSSIER, Petitioner,

v.

UNITED STATES of America, Respondent.

June 21, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. CR91-4-THOM), J. Robert Elliott, Judge

Before KRAVITCH and BIRCH, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Following the entry of a preliminary order of criminal forfeiture under 18 U.S.C.A. § 982(a) (West Supp.1995), "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C.A. § 853(n) (West Supp.1995).[1] The question of first impression presented in this case is whether this § 853(n) proceeding, ancillary to a criminal forfeiture prosecution but instituted by a third-party claimant, is

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]The § 853(n) procedure is made expressly applicable to criminal forfeitures under § 982(a) by 18 U.S.C.A. § 982(b)(1) (West Supp.1995).

a "civil action" within the meaning of an Equal Access to Justice Act ("EAJA") provision permitting attorneys' fee awards against the United States. *See* 28 U.S.C.A. § 2412(d)(1)(A) (West 1994).[2] We hold that § 853(n) proceedings are civil actions under the EAJA. Because the government's litigation position in this case was not substantially justified, we AFFIRM the district court's order awarding attorneys' fees to the third-party claimant.

I.

Noel Lussier loaned a total of $157,500 to Robert E. Douglas, Jr., between 1985 and 1987, and reduced the debt to judgment in 1989 following Douglas's default. In August 1990, in an effort to collect his judgment, Lussier instituted an action in the district court against Douglas's family members and corporations controlled by Douglas, alleging a conspiracy with Douglas to defraud creditors. In connection with that litigation, Lussier filed proper notices of lis pendens for affected real and personal property. In September 1990, pursuant to a consent decree, the disputed property was deposited with the clerk of the district court pending resolution of the action.

In June 1991, the United States filed a criminal information

---

[2]Section § 2412(d)(1)(A) provides, in pertinent part:

> [A] court shall award to a prevailing party other than the United States [attorneys'] fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

against Douglas, alleging money laundering[3] and mail fraud[4] in connection with his insurance business.  The government also sought criminal forfeiture, under 18 U.S.C. § 982(a), [5] of six items of real and personal property.  Douglas pleaded guilty and acceded to this forfeiture demand in his plea agreement;  the district court then issued a preliminary order of forfeiture.

The forfeiture order covered three items previously placed in the court's registry pursuant to the *Lussier v. Douglas* consent decree.  Lussier filed a § 853(n) petition opposing forfeiture of these properties, demonstrating that they neither (i) were involved in money laundering (or traceable to any involved property) within the meaning of § 982(a)(1), nor (ii) constituted (or derived from) proceeds of mail fraud within the meaning of § 982(a)(2). Consequently, Lussier argued, the three properties simply were not

---

[3]*See* 18 U.S.C.A. § 1957 (West Supp.1995).

[4]*See* 18 U.S.C.A. § 1341 (West Supp.1995).

[5]This section provides, in relevant part:

> (1) The court, in imposing sentence on a person convicted of an offense in violation of [*inter alia,* 18 U.S.C. § 1957], shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property....

> (2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—

> (A) [*inter alia,* 18 U.S.C. § 1341], affecting a financial institution, ...

> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

forfeitable under the statute.  The government's sole response to Lussier's summary judgment motion was that the rules of *civil* procedure did not apply in the *criminal* forfeiture context (and summary adjudication therefore was improper);  it did not challenge Lussier's factual contentions.  The district court granted summary judgment for Lussier and modified its forfeiture order.[6]

Lussier then moved for attorneys' fees pursuant to 28 U.S.C. § 2412(d)(1)(A).  Noting that "the government apparently made no investigation into factual background prior to seeking forfeiture," the district court found that the government's litigation position with respect to the three properties was not substantially justified, and awarded about $21,000 in attorneys' fees to Lussier.

## II.

On appeal, the government contends that because a § 853(n) proceeding is ancillary to a criminal forfeiture prosecution, it is not a civil action within the meaning of the EAJA, and that an attorneys' fee award against the United States consequently was unauthorized.  No appellate court has addressed this question.[7]

We begin by considering the nature of the § 853(n) proceeding. Once a criminal forfeiture prosecution has been filed, third parties are expressly barred by 21 U.S.C. § 853(k)(2) from "commenc[ing] an action at law or equity against the United States

---

[6]The government voluntarily dismissed its appeal from the summary judgment order.

[7]*But see United States v. Bachner,* 877 F.Supp. 625 (S.D.Fla.1995) (holding that § 853(n) proceedings are civil actions under 28 U.S.C. § 2412(b), an EAJA attorneys' fee provision similar to § 2412(d)(1)(A));  *cf. United States v. Reckmeyer,* 836 F.2d 200, 209 (4th Cir.1987) (reserving question).

concerning the validity of [their] alleged interest in the property," *except* "as provided in [§ 853(n) ]."[8]  Congress therefore viewed a § 853(n) hearing as a species of an "action at law or equity"—a substitute for separate *civil* litigation against the government.[9]

The mere fact that Congress viewed § 853(n) proceedings as generally civil,[10] however, does not necessarily mean that they are civil actions within the particular meaning of the EAJA.  "The application of each statute or rule using the words "civil action' must be decided on the basis of its [own] language, its [own] history and its [own] purpose."  *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels),* 775 F.2d 499, 503 (2nd Cir.1985).  The EAJA does not define the term "civil action," and the statute is, on its face, ambiguous as applied to § 853(n) proceedings.  Our examination of the legislative history of the

---

[8]Section 853(k)(1) similarly bars third-parties from intervening directly in the criminal forfeiture prosecution.

[9]The legislative history of § 853(n) similarly indicates that Congress considered this ancillary proceeding to be essentially civil.  *See* H.R.Rep. No. 1030, 98th Cong., 2d Sess. 206-07 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3389-90 (legislative history of identically-worded RICO criminal forfeiture provision) ("[O]nce the indictment or information is filed, a third party is not to commence a *civil suit* against the United States;  *instead* the third party should avail himself of the ancillary hearing procedure....  [I]t is anticipated that the new hearing procedure should provide for more expedited consideration of third party claims than would the filing of separate civil suits.")  (emphasis added);  *see also id.* at 214, *reprinted in* 1984 U.S.C.C.A.N. at 3397 (directing that legislative history of RICO provision be used as legislative history of § 853).

[10]*See also United States v. Lavin,* 942 F.2d 177, 181-82 (3rd Cir.1991) (§ 853(n) proceeding is a "civil case" under Fed.R.App.P. 4(a)(1) for purposes of calculating time to appeal).

EAJA, however, suggests that these proceedings are the paradigm of a civil action under that statute.

In enacting the EAJA, Congress noted that

> [f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988. Recognizing that for "certain individuals, partnerships, corporations and labor and other organizations ... [t]he economic deterrents to contesting governmental action [further] are magnified in these cases by the disparity between the resources and expertise of these individuals and their government," Congress intended to "reduce [such] deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified." *Id.* at 5-6, *reprinted in* 1980 U.S.C.C.A.N. at 4984.[11]

Failure to apply the EAJA to § 853(n) proceedings would contravene Congress's desire to instill governmental accountability and to level the playing field in economic disputes between the government and its citizens. The United States generally can

---

[11]*See also* H.R.Rep. No. 120, Part I, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S.C.C.A.N. 132, 132-33 (reiterating purpose of EAJA).

choose between civil and criminal forfeiture remedies,[12] and consequently also choose the manner in which third parties must defend their property interests. The EAJA clearly applies to protect successful third-party intervenors in civil forfeiture proceedings. *See, e.g., United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 838 F.2d 1558 (11th Cir.1988). If the EAJA did not also apply to protect § 853(n) third-party petitioners, the government would have an obvious incentive to channel substantially unjustified forfeiture attempts into the criminal forfeiture "safe haven" in the hope that the amount at stake for each individual petitioner would be too small to make litigation worthwhile. *Accord Bachner,* 877 F.Supp. 627 ("It seems fundamentally unfair for the availability of attorneys fees [to third parties] to hinge upon the choice of the [government] to bring the action under the civil or criminal forfeiture statute.").

Our analysis also is consistent with the way other courts have classified hybrid proceedings in applying the EAJA. When brought by persons not under criminal indictment, proceedings that are usually ancillary to criminal prosecutions have been held to be civil actions. *See Purcell v. United States,* 908 F.2d 434, 437 (9th Cir.1990) (Fed.R.Crim.P. 41(e) motion for return of property by person under government investigation was civil action under EAJA, as no formal criminal proceedings had been initiated); *Lee*

---

[12]*See United States v. Elgersma,* 971 F.2d 690, 695 (11th Cir.1992) (en banc) (noting that if beyond a reasonable doubt standard were applied to § 853(a)(1) criminal forfeiture, government would invariably choose to employ civil forfeiture under 21 U.S.C. § 881).

*v. Johnson,* 799 F.2d 31, 36-38 & n. 6 (3rd Cir.1986) (separate action by grand jury targets, against whom no criminal charges were pending, to quash grand jury subpoena and obtain injunctive relief against government actors was civil action under EAJA). Section 853(n) claimants are, by definition, third parties who are not even under investigation in connection with the pertinent criminal forfeiture prosecution, as the ancillary proceedings are instituted by persons "other than the [forfeiture] defendant" *after* the main criminal proceedings are concluded. *See* 21 U.S.C. § 853(n)(2). Consequently, the case for holding § 853(n) proceedings to be civil under the EAJA is even stronger than that supporting the results in *Lee* and *Purcell.*[13]

We recognize that because "[t]he EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity ... [the] waiver must be strictly construed in favor of the United States." *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). But while "the rule requiring clear statement of waivers of sovereign immunity ... applies even to determination of the scope of explicit waivers," it does not "require explicit waivers to be given a meaning that is implausible." *United States v. Williams,* --- U.S. ----, ----, 115

---

[13]Furthermore, decisions holding that proceedings related to criminal prosecutions are not civil actions under the EAJA when brought by indicted or convicted criminal defendants therefore are distinguishable. *See In re Simels,* 775 F.2d at 502-04 (Fed.R.Crim.P. 17(c) motion by criminal defendant-intervenor to quash grand jury subpoena issued against his attorney); *Ewing v. Rodgers,* 826 F.2d 967, 969-71 (10th Cir.1987) (federal prisoner habeas petition); *Boudin v. Thomas,* 732 F.2d 1107, 1112-15 (2nd Cir.1984) (same).

S.Ct. 1611, 1620, --- L.Ed.2d ---- (1995) (Scalia, J., concurring). Accordingly, we hold that litigation between an innocent third-party claimant and the government, ancillary to a criminal forfeiture proceeding, is a civil action within the purview of the EAJA.[14]

## III.

Under § 2412(d)(1)(A), the attorneys' fee award against the government is mandatory "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The government's position is substantially justified under the EAJA when it is "justified to a degree that would satisfy a reasonable person"—i.e. when it has a reasonable basis in both law and fact. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The district court in this case concluded that the government's

---

[14]In *Bachner,* the court concluded that § 853(n) proceedings are civil under the EAJA because, under the express terms of § 853(n)(6), the third-party claimant "carrie[s] the burden of proof at trial, the burden of proof [is] by a preponderance of the evidence, and [the claimant seeks] to protect its property rights which are ordinarily protected by civil actions." *Bachner,* 877 F.Supp. at 627.

Although we agree with the result in *Bachner,* we expressly disclaim reliance on this aspect of its reasoning. The recited factors are not necessarily determinative of whether a proceeding is a civil action *under the EAJA.* For example, the § 853(n) petitioner's attempt to protect her property rights may, as in Lussier's case, simply involve consideration of the same issues as those involved in the criminal forfeiture prosecution itself. *See Reckmeyer,* 836 F.2d at 206 (although § 853(n) petitioner usually tries to defeat forfeiture by establishing ownership of superior interest or bona fide purchaser for value status, she also may relitigate nexus between property and criminal offense established in criminal prosecution by showing "that a particular asset was not forfeitable [to begin with] under the terms of the statute").

position was not substantially justified, and that no special circumstances were present, as "the government apparently made no investigation into factual background prior to seeking forfeiture." We review this determination for abuse of discretion. *See Pierce,* 487 U.S. at 558-63, 108 S.Ct. at 2546-49.

The government first argues that its decision to seek forfeiture of the three properties in question must have been substantially justified because it received the imprimatur of the district court. The district court, the government contends, must have found a "factual basis" for the criminal forfeitures recited in the plea agreement when it accepted Douglas's guilty plea. *See* Fed.R.Crim.P. 11(f). We disagree. In *United States v. Boatner,* 966 F.2d 1575, 1581 (11th Cir.1992), this court held that because "a forfeiture provision in a Rule 11 agreement is not a plea to a substantive charge, but [rather] a sanction to which the parties agree as a result of the defendant's plea ... a sentencing judge is not required under Rule 11 to determine whether there is a factual basis for a defendant's concession to a criminal forfeiture pursuant to his plea bargain with the government." Consequently, in accepting the plea, the district court made no determination on which the government was entitled to rely in its subsequent decision to seek a preliminary order of forfeiture.

The government next contends that its position was substantially justified because it raised a question of first impression in opposing Lussier's summary judgment motion. After the initial grant of summary judgment against it, the government

moved to alter or amend judgment,[15] arguing, in reliance on decisions from other circuits, that general creditors do not have standing to bring § 853(n) petitions. *See, e.g., United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1191-92 (D.C.Cir.1995), *petition for cert. filed,* (U.S. May 2, 1995) (No. 94-1806-CFY). The district court denied the motion.

We need not consider the issues raised by decisions such as *BCCI Holdings,* as these cases clearly do not apply here.[16] *BCCI Holdings* explains that general creditors do not have standing "*unless* they have already secured a judgment against the debtor and perfected a lien against a particular item [among those to be forfeited]." *BCCI Holdings,* 46 F.3d at 1191 (emphasis added).[17] It is undisputed that Lussier had obtained a judgment against Douglas, filed appropriate notices of lis pendens, and segregated the affected property into the registry of the court almost a year before the commencement of the criminal proceedings. Thus the *BCCI Holdings* argument did not render the government's position substantially justified.[18]

---

[15]*See* Fed.R.Civ.P. 59(e).

[16]The government implicitly conceded as much by not pursuing an appeal from the final summary judgment order.

[17]*Accord United States v. Schwimmer,* 968 F.2d 1570, 1581 (2nd Cir.1992) (general creditor does not have standing "until he has obtained some judgment and secures [the relevant] asset or ... funds. At that point, he is no longer merely a general creditor.").

[18]The government's Rule 59(e) motion also was untimely. It is unclear from the district court's order whether it denied this motion as untimely or reached the merits. If the motion was denied as untimely, then the *BCCI Holdings* argument never was properly presented to the district court, and therefore cannot count as part of the government's position in deciding whether

The government's remaining arguments do not warrant discussion. The frivolousness of its forfeiture attempt is palpably illustrated by its initial opposition to Lussier's motion for summary judgment on the sole ground that the rules of civil procedure did not apply. The district court did not abuse its discretion in finding a lack of substantial justification for the government's position.

IV.

For the foregoing reasons, the order awarding attorneys' fees against the United States is AFFIRMED.

---

that position was substantially justified. We need not decide the issue, however, as the argument was, in any event, frivolous on the merits.