# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2909

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Bobby Keith Moser, | * | District of Arkansas. |
| | * | |
| Defendant, | * | |
| | * | |
| Barry J. Jewell, | * | |
| | * | |
| Petitioner - Appellant. | * | |

_____

Submitted: April 17, 2009
Filed: November 18, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Barry J. Jewell sought attorneys' fees pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), codified in part at 28 U.S.C. § 2465(b), after he prevailed in an ancillary proceeding pursuant to 21 U.S.C. § 853(n). The § 853(n) proceeding was ancillary to a criminal case against Jewell's former law partner, Bobby Keith Moser. In Moser's criminal case, the government had seized Jewell's pension and

retirement account funds, and in the § 853(n) proceeding, the district court[1] concluded that the funds were beyond the reach of the government's forfeiture efforts. Ultimately, even though Jewell prevailed in the ancillary proceeding, the district court denied his fee request, finding that the ancillary proceeding did not qualify as "any civil proceeding to forfeit property under any provision of Federal law." 28 U.S.C. § 2465(b)(1).

We find many of Jewell's arguments regarding the characterization of § 853(n) ancillary proceedings persuasive. Ultimately, however, we are called upon in this case to interpret the breadth of 28 U.S.C. § 2465(b), a federal statute waiving sovereign immunity and authorizing the payment of attorneys' fees in limited situations. The arguments for and against permitting a prevailing § 853(n) petitioner to receive attorneys' fees from the government are too closely balanced for us to conclude that Congress's waiver of sovereign immunity clearly and unequivocally applies in this situation. See Arneson v. Callahan, 128 F.3d 1243, 1247 (8th Cir. 1997). Accordingly, we affirm the judgment of the district court denying Jewell's petition for fees.

I. Background

The government indicted Moser for acts of fraud involving client trust accounts. Moser eventually pleaded guilty to mail fraud, money laundering, interstate transportation of stolen property, tax fraud, and conspiracy. In this case, the criminal case against Moser, the court entered an order of forfeiture. Shortly after the court entered the order, the government filed an application under seal for warrants to seize approximately $160,000 that Jewell held in pension and retirement accounts. In support of the application, the government provided an affidavit from an IRS agent

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

who alleged that the funds in Jewell's accounts could be traced to Moser's criminal activities. The court relied on the affidavit and granted the seizure warrants. The government then moved to include these seized assets in the order of forfeiture, and the court granted the motion.

On July 14, 2006, Jewell filed a petition pursuant to 21 U.S.C. § 853(n)(2) initiating ancillary proceedings and seeking an amendment to the forfeiture order. Jewell asserted a right to the $160,000 from the pension and retirement accounts and alleged that his right was superior to that of the government.

In December 2006, Jewell filed a motion for summary judgment in these ancillary proceedings asserting that the government had not established the requisite connection between the seized funds and Moser's criminal activity. The government then filed a stay of discovery in relation to Jewell's pending motions. The government stated that it had discovered that a different group of federal prosecutors were considering criminal charges against Jewell. The government argued that a criminal case against Jewell should proceed before resolution of the ancillary proceedings in Moser's case and before resolution of Jewell's summary judgment motion regarding forfeiture.

The government and Jewell filed several additional competing motions in the § 853(n) proceedings, and eventually, the government indicted Jewell in a separate criminal case. In the criminal case against Jewell, the government asserted that the same funds it seized under the seizure warrants and order of forfeiture in Moser's criminal case were subject to forfeiture in Jewell's own criminal case. Accordingly, upon filing the indictment against Jewell, the government asserted rights to the same property through two channels: this criminal case against Moser (as contested by Jewell in the § 853(n) proceedings) and the separate criminal case against Jewell.

Eventually, the court in the criminal case against Jewell entered a protective order authorizing the pretrial retention of the funds already seized through Moser's case. The government then filed yet another case involving the same funds, this time an *in rem* action against the already-seized funds asserting rights to civil forfeiture. Jewell intervened as a claimant in the *in rem* action, asserting rights as the owner of the property.

The court in the ancillary proceedings under § 853(n) denied Jewell's motion for summary judgment and granted a joint motion to stay the ancillary proceedings pending resolution of the criminal case against Jewell and resolution of the separate, *in rem*, civil-forfeiture case.

Jewell then filed a motion for summary judgment in the *in rem* action and a motion to vacate the protective order in his own criminal case. He asserted arguments based on ERISA, stating that the funds at issue were protected from forfeiture. The district court[2] accepted Jewell's arguments and granted summary judgment denying forfeiture in the *in rem*, civil action. That same court vacated the protective order in Jewell's criminal case and ordered the government to return the funds to Jewell.[3]

---

[2]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

[3]Eventually, Jewell's criminal case went to trial. After a fourteen-day trial, a jury convicted Jewell of tax evasion but acquitted him as to conspiracy charges. There is no allegation that the particular funds at issue in the present case are still in play in the criminal case against Jewell or that the IRS or the government still seek those funds in relation to Jewell's conviction. In any event, we are not called upon to decide any matters related to the criminal case against Jewell or the judgments regarding forfeiture in any of the cited cases. The present appeal involves only the issue of attorneys' fees.

After that district court entered those orders, the government refused to release the funds to Jewell, arguing that the funds were still subject to the original forfeiture order and seizure warrant in this case, Moser's criminal case. The parties then moved to lift the stay as to the § 853(n) ancillary proceedings. Subsequently, the district court in the present case held that the ERISA-based decision from the *in rem* action governed the treatment of the funds. Accordingly, the court vacated the remaining seizure warrant and ordered the funds returned to Jewell.

Jewell then moved for attorneys' fees in this case under 28 U.S.C. § 2465(b). The district court determined that § 2465(b) did not make attorneys' fees available to a successful § 853(n) claimant such as Jewell. Jewell appeals the fee decision.

II.    Discussion

The only question at issue in this appeal is whether the ancillary proceeding triggered by Jewell's § 853(n) motion in Moser's criminal case is "any civil proceeding to forfeit property under any provision of Federal law" in accordance with 28 U.S.C. § 2465(b)(1). If so, Jewell may recover attorneys' fees. If it is not, *i.e.*, if (1) the proceeding is not civil, or (2) if it is not a "proceeding to forfeit property under any provision of federal law," then § 2465 (b)(1) does not permit a fee recovery. In addressing this question, we must construe § 2465(b)(1) narrowly and find a waiver of sovereign immunity only where Congress clearly and unequivocally expressed its intention to make public funds available. Arneson, 128 F.3d at 1247 ("The Court has instructed us to construe the scope of such waivers in the sovereign's favor; to limit such waivers to their plain language; and to construe ambiguities in favor of immunity.") (internal citations omitted). Because the present question is a question of statutory interpretation to determine the applicability of sovereign immunity, our review of the district court is de novo. Riley v. United States, 486 F.3d 1030, 1031 (8th Cir. 2007).

A.      Nature of the Proceedings

"Twenty-one United States Code § 853 addresses criminal forfeitures." United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007).  Without parsing § 853(n) finely, then, there is an immediate and legitimate textual argument to support the view that § 853(n) proceedings are not civil, but rather are criminal, in nature—subsection (n) appears within a larger Code section dealing with the standards and procedures applicable to criminal forfeiture.  Section 853(n) specifically, however, is the exclusive mechanism for third parties—persons other than the underlying criminal defendants—to petition courts and assert claims to property the government has seized in relation to underlying criminal cases.

Jewell argues that these limited proceedings are civil or civil in nature even though the proceedings take place in the larger context of a criminal case.  Several courts have adopted his view, comparing the proceedings to quiet title actions, or viewing the procedural framework, the parties involved, the burdens of proof, or the issues involved as establishing that § 853(n) proceedings are civil in nature.  See, e.g., United States v. MacInnes, 223 Fed. App'x 549, 552 (9th Cir. 2007) (unpublished) (stating that a § 853(n) petition by a person who is not the criminal defendant is civil in nature because the determination should be governed by "the nature of the petitioner, rather than the statute governing the proceeding"); United States v. McHan, 345 F.3d 262, 275–76 (4th Cir. 2003) (comparing § 853(n) proceedings to quiet title actions);  United States v. Alcaraz-Garcia, 79 F.3d 769, 772 n.4 (9th Cir. 1996) (holding that, under Fed. R. App. P. 4(a)(1), a § 853(n) petitioner has sixty days to appeal a district court's decision, as opposed to the ten-day time limit applied in criminal cases, because a § 853(n) proceeding is civil in nature); United States v. Douglas, 55 F.3d 584, 586 (11th Cir. 1995) ("Congress . . . viewed a § 853(n) hearing as a species of an 'action at law or equity'—a substitute for separate *civil* litigation

-6-

against the government.") (quoting 21 U.S.C. § 853(k)(2))[4]; United States v. Lavin, 942 F.2d 177, 181-82 (3d Cir. 1991) (same holding as Alcaraz-Garcia); United States v. D'Esclavelles, 541 F. Supp. 2d 794, 797 (E.D. Va. 2008) (granting fees under § 2465(b)(1) and stating, "The hearing that follows [a § 853(n) petition] is civil in nature."), overruled on other grounds by United States v. Buk, 314 F. App'x 565, 570 (4th Cir. 2009) (unpublished); United States v. Nolasco, 2008 WL 4388518, at *2 (D. N.J. Sept. 29, 2008) ("Moving Petitioners correctly characterize their § 853(n) petition as 'civil.'"); United States v. McCollum, 443 F. Supp. 2d 1154, 1165 (D. Neb. 2006) (stating in dicta, "Although this is a criminal case, the matter before me is quasi-civil in nature and arises pursuant to 21 U.S.C. § 853(n)"); United States v. Wade, 291 F. Supp. 2d 1314, 1316-17 (M.D. Fla. 2003) (holding that a petitioner is not entitled to effective assistance of counsel because § 853(n) petitions are civil in nature).

There is support for this view in the statute itself because, although a § 853(n) proceeding is ancillary to a criminal case, it is separate from proceedings against the criminal defendant, it carries many of the hallmarks of a civil proceeding, and it bears few if any hallmarks of a criminal proceeding. See 21 U.S.C. § 853(n)(6) (imposing the burden of proof on the third-party claimant with the civil standard of preponderant evidence, "If . . . the court determines that the petitioner has established by a preponderance of the evidence . . . ."); id. § 853(n)(1) & (7) (requiring the government to post notice and satisfy various other requirements before it may perfect an interest in the property and convey clear title); id. § 853(n)(2) (expressly excluding participation by the underlying criminal defendant and expressly denying any right to a jury); id. § 853(n)(2) & (4) (requiring the court to hold a hearing specifically to

_____

[4]The Eleventh Circuit's Douglas case involved application of the fee-shifting provisions of the Equal Access to Justice Act ("EAJA") in the context of a § 853(n) proceeding. Jewell does not make a claim under the EAJA, which conditions the availability of fees on the absence of a reasonable basis for the government's position. Accordingly, we have no opportunity to express an opinion as to whether fees should be available to a prevailing § 853(n) petitioner under the EAJA.

adjudicate the validity of the competing ownership interests in the property and permitting, without qualification, the consolidation of all such claims into one proceeding); id. § 853(n)(5) (referring to the record in the underlying criminal case as a separate record and authorizing the court to consider that separate record, "the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture").

In addition, Federal Rule of Criminal Procedure 32.2(b)(2) and 21 U.S.C. § 853(k) preclude third-party claimants from actually intervening in underlying criminal cases. This further illustrates the separation between an underlying criminal case and a related § 853(n) proceeding.[5] Also, the Advisory Committee Note to Subsection (c) of Federal Rule of Criminal Procedure 32.2, states expressly that § 853(n) ancillary proceedings are governed, at least in part, by the Federal Rules of Civil Procedure:

> Because an ancillary hearing is connected to a criminal case, it would not be appropriate to make the Civil Rules applicable in all respects. The amendment, however, describes several fundamental areas in which procedures analogous to those in the Civil Rules may be followed. These include the filing of a motion to dismiss a claim, conducting

---

[5]21 U.S.C. § 853(k) provides:

Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may--
(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

discovery, disposing of a claim on a motion for summary judgment, and appealing a final disposition of a claim.

All of these factors indicate ancillary proceedings are more civil in nature than criminal. Militating against a finding that the ancillary proceeding is civil is the fact that the ancillary proceeding is not actually a separate case involving a separate judgment and case number. Accordingly, an ancillary proceeding results in, at most, an amendment to a forfeiture order in a criminal case. See 21 U.S.C. § 853(n)(6). That having been said, the fee statute at issue in the present case refers to civil "proceedings," not civil cases or actions. See 28 U.S.C. § 2465(b)(1).[6] Looking at the nature of the proceedings rather than the nature of the cases, then, Jewell presents a strong argument that the proceedings are civil in nature.

B.      "Proceeding to Forfeit Property Under any Provision of Federal Law"

Even if the proceedings are civil, fees are available under 28 U.S.C. § 2465(b)(1) only if a § 853(n) proceeding is a "proceeding to forfeit property under any provision of federal law." Most courts that have addressed this issue have concluded that § 853(n) proceedings do not satisfy this requirement, including courts that concluded the ancillary proceedings were civil in nature. See, e.g., Nolasco, 2008 WL 4388518, at *3 (D. NJ Sept. 29, 2008) (labeling the § 853(n) proceeding civil but

---

[6]In one case, we addressed the availability of fees where a criminal defendant brought a claim under Federal Rule of Criminal Procedure 41(g) for the return of seized property and also filed a petition pursuant to § 853(n). United States v. Porchay, 533 F.3d 704, 710 (8th Cir. 2008). There, we characterized the underlying seizure and forfeiture process as a criminal forfeiture. In that case, however, the defendant sought fees under the Hyde Amendment, codified at 18 U.S.C. § 3006A, which permits fee awards in criminal cases involving bad faith or vexatious prosecutions. Accordingly, the defendant's election to seek fees under the Hyde Amendment afforded our court no opportunity to opine on the nature of § 853(n) proceedings as civil or criminal proceedings.

stating that the forfeiture occurs in the underlying criminal case and not through the § 853(n) proceedings); United States v. Gardiner, 512 F. Supp. 2d 1270, 1272 (S.D. Fla 2007) (refusing to award fees to a successful § 853(n) petitioner because CAFRA applies "only in civil forfeiture proceedings").

Relying on these cases, the government argues that a § 853(n) proceeding is not a "proceeding to forfeit property" because the entire forfeiture process is contained in the underlying criminal case and lies beyond the reach of any challenges from third parties. According to the government, the forfeiture is complete before the time arises for the government to post notices or for property owners to file § 853(n) petitions. See 21 U.S.C. § 853(n)(1) ("Following entry of an order of forfeiture . . . the United States shall publish notice of the order . . . ."); id. § 853(n)(2) ("Any person, other than the defendant . . . may, within thirty days of the final publication of notice or his receipt of notice . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property."). The government characterizes the subsequent § 853(n) proceedings as nothing more than quiet title actions concerning property that has already been forfeited.

We agree with the government to a limited extent. Forfeiture as to the defendant's rights to the seized property undoubtedly is complete prior to any § 853(n) proceedings. United States v. Porchay, 533 F.3d 706, 710 (8th Cir. 2008) ("[T]here is no provision in § 853(n) to relitigate the outcome of [the] proceedings [involving the criminal defendant.]"). The issues determined in the earlier proceedings involving the criminal defendant relate to the tracing of property as proceeds of criminal activity or as property used in conducting criminal activity. 21 U.S.C. § 853(a)(1)-(3). In contrast, the issues that courts address within § 853(n) proceedings are claims of ownership and priorities of interest vis-a-vis the government and the petitioners. Id. § 853(n)(2).

-10-

Still, the government does not possess clear title to the seized property until after the conclusion of § 853(n) proceedings (or until after the posting of notice in the absence of any petitions). Id. § 853(n)(7) ("Following the court's disposition of all petitions . . . the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee."). Accordingly, it is not entirely clear when we may characterize the forfeiture of property complete—after the extermination of the criminal defendants' rights (in which case the § 853(n) proceedings would not be "proceedings to forfeit property") or after the government secures clear title. Given the context of the present inquiry, we need not conclusively resolve this question. Rather, the lack of a clear answer in the statutory text and the balanced arguments dictate an outcome.

C. Sovereign Immunity

We must consider that CAFRA constitutes a waiver of sovereign immunity exposing the government to liability. As such, we are bound to construe it narrowly and deem the waiver of sovereign immunity to extend only to those situations where Congress's intent is clear and unequivocal. See Arneson, 128 F.3d at 1247 (finding that a statutory provision did not permit interest payments where it did "not evidence Congress's clear and unequivocal consent to interest awards against the government"); see also United States v. Williams, 514 U.S. 527, 541 (1995) ("[T]he rule requiring clear statement of waivers of sovereign immunity . . . applies even to determination of the scope of explicit waivers.") (Scalia, J., concurring); accord United States v. Douglas, 55 F.3d 584, 588 (11th Cir. 1995). Here, there are multiple reasonable interpretations of the relevant statutory provisions, and there are strong arguments to support both positions as to whether a § 853(n) proceeding qualifies as "any civil proceeding to forfeit property under any provision of Federal law." 28 U.S.C. §

2465(b)(1).  As such, we cannot say that Congress clearly and unequivocally waived sovereign immunity in this situation.  Accordingly, we hold that attorneys' fees are not available to Jewell in relation to the § 853 ancillary proceeding.

We affirm the judgment of the district court.

_____