# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1989

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Robert Dean White, | * | District of Minnesota. |
| | * | |
| Defendant, | * | |
| | * | |
| Robyn White, | * | |
| | * | |
| Petitioner/Appellant. | * | |

_____

Submitted: November 18, 2011
Filed: April 2, 2012

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Robyn White (White) appeals the district court's[1] dismissal of her petition seeking half the proceeds of the sale of stock that was ordered forfeited in her ex-husband's conviction for mail fraud and money laundering in connection with the

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Thomas Petters Ponzi scheme. We conclude that White does not allege a legal interest in the stock proceeds sufficient to confer standing, and that, even if she did, her petition fails on the merits. Accordingly, we affirm.

I.

Robert Dean White (Defendant) founded ZINK Imaging, LLC (ZINK)[2] in 2005. Between approximately October 24, 2005, and January 19, 2006, Defendant invested $2,550,000 in ZINK.[3] Months later, in September 2006, White was hired as a marketing consultant for ZINK. After beginning a romantic relationship with Defendant in January 2007, White no longer received compensation for her work. She alleges that she continued working for the company because Defendant orally agreed to give her one-half the increase in value of his shares of ZINK stock. White and Defendant were married on February 22, 2008.

The Federal Bureau of Investigation (FBI) conducted a raid of Thomas Petters' enterprises in September 2008, and White ceased working for ZINK that same month. On October 8, 2008, Defendant pled guilty to one count of mail fraud and one count of money laundering for his role in the Petters scheme. Defendant's entire investment in ZINK was traced by a FBI forensic accountant to transfers from Petters Company, Inc. (PCI). Defendant admitted in his plea agreement that all funds he received from PCI were proceeds of the Petters fraud. Defendant further admitted that the fraud spanned more than thirteen years, during which time he fabricated documents for the purpose of defrauding third parties into loaning PCI billions of dollars.

---

[2]In 2007, ZINK Imaging, LLC merged into ZINK Imaging, Inc.

[3]In August 2007, ZINK underwent a recapitalization. The recapitalization agreement stated that Defendant's investments in ZINK were deemed to be in exchange for his shares of ZINK stock.

Defendant transferred his ZINK stock to his counsel, Joe Friedberg, "at about the time of the search warrant raid on Petters Company." Robert White Dep. 61:9-64:19. Shortly after taking control of the ZINK stock, Friedberg received an offer of $3 million for the stock. ZINK's chief executive officer told Friedberg that if he sold the stock within the next four or five days, the purchaser would loan ZINK an additional $5 million needed to keep the company operating. Friedberg then sold the stock for $3 million and transferred the proceeds to the Receiver in the Petters bankruptcy proceeding.

On September 13, 2010, the district court ordered that all of Defendant's property derived from or traceable to the fraud be forfeited to the United States. On or about September 20, 2010, White filed for divorce from Defendant. In the divorce proceeding, White sought an award of one-half the proceeds of the ZINK stock,[4] alleging that the proceeds were marital property under Minnesota law.

On October 13, 2010, following the entry of a preliminary order of forfeiture, which did not specifically forfeit the ZINK stock, White filed her initial forfeiture petition, in which she claimed a marital interest and "an interest similar to a quantum meruit claim" in the forfeited proceeds of the ZINK stock. The parties agreed to stay the district court's consideration of White's initial petition because the ZINK stock had not yet been specifically forfeited.

On January 6, 2011, the district court entered an order forfeiting the $3 million in proceeds from the sale of the ZINK stock. The district court concluded that the government had established the requisite nexus between the fraud and the ZINK stock proceeds to support a determination that the property was forfeitable to the United States. Thereafter, White filed an amended third-party petition, again seeking half the

---

[4]We note that White seeks half the proceeds from the sale of ZINK stock instead of half the increase in value of the stock, as allegedly promised.

-3-

proceeds of the sale of stock in ZINK. White alleged in her amended petition both a marital and a contractual interest in the ZINK stock proceeds.[5] White also claimed that the district court had erroneously forfeited the ZINK stock proceeds, alleging that "there is no nexus between" the stock and "the criminal activity upon which [Defendant] was convicted." Amended Pet. 2-3.

On April 5, 2011, the Hennepin County District Court entered a judgment and decree in the Whites' divorce proceeding. The order adopted a stipulation between White and Defendant that awarded White one-half the proceeds from the sale of the ZINK stock. On April 19, 2011, the federal district court dismissed White's petition, finding that White could not challenge the forfeiture, that White lacked standing to claim a portion of the ZINK proceeds, and that even if she had standing, White's petition failed on the merits. Because the divorce decree was entered after both of White's petitions were filed, the district court did not consider the decree in its order. On appeal, White argues that she has a right to challenge the forfeiture, that she has standing, and that she is a bona fide purchaser for value of the ZINK stock.

II.

We review *de novo* a district court's grant of a motion to dismiss a forfeiture petition. See Cent. Platte Natural Res. Dist. v. U.S. Dept. of Agric., 643 F.3d 1142, 1148 (8th Cir. 2011). Federal Rule of Criminal Procedure 32.2(c)(1)(A) authorizes the dismissal of a forfeiture petition "for lack of standing, for failure to state a claim,

---

[5]White's amended petition alleged four interests in the proceeds of the stock: (1) beneficial and *de facto* ownership of one-half of Defendant's ZINK stock; (2) a marital interest; (3) "an interest similar to *quantum meruit*;" and (4) an oral contractual interest. White did not brief her claims of *de facto* ownership and *quantum meruit*, and so we consider only her marital and contractual interest in the proceeds of the ZINK stock. See Carraher v. Target Corp., 503 F.3d 714, 716 n.2 (8th Cir. 2007).

or for any other lawful reason." For the purposes of the motion to dismiss, the facts set forth in the petition are assumed to be true. Id. "If a third party fails to allege in its petition all elements necessary for recovery, including those related to standing, the court may dismiss the petition without providing a hearing." United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of General Creditors), 919 F. Supp. 31, 36 (D.D.C. 1996) (quoted with approval in Fed. R. Crim. P. 32.2 advisory committee's note to the 2000 amendments subd. (c)). "We may affirm on any basis supported by the record." Green Tree Serv., LLC v. DBSI Landmark Towers, LLC, 652 F.3d 910, 913 (8th Cir. 2011) (quoting Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010)).

A.

White contends that she has a right to relitigate the factual basis underlying the government's forfeiture of Defendant's ZINK stock. White argues that Defendant "obtained the subject ZINK shares prior to the infusion of said funds from PCI[.]" Appellant's Br. 13. She further contends that "PCI received in consideration for [the $2.5 million transfer to ZINK], separate shares of ZINK stock." Id. In essence, White argues the ZINK shares of stock were not necessarily the product of Defendant's fraud.

White misunderstands the nature of an ancillary hearing. An ancillary proceeding allows White to establish her interest in the forfeited property as it compares to the interests of the government and other petitioners; it does not allow her to relitigate the nexus between the criminal acts of her ex-husband and the forfeited proceeds from the sale of the ZINK stock. United States v. Moser, 586 F.3d 1089, 1095 (8th Cir. 2009). In United States v. Porchay, we concluded that "there is no provision in § 853(n) to relitigate the outcome of [the forfeiture] proceedings." 533 F.3d 704, 710 (8th Cir. 2008); see also Moser, 586 F.3d at 1095 (following Porchay). As the district court indicated, the criminal proceedings trace the property

to criminal activity, and the ancillary hearing under § 853(n) addresses "claims of ownership and priorities of interest vis-à-vis the government and the petitioners." D. Ct. Order of April 19, 2011, at 5 (quoting Moser, 586 F.3d at 1095). Thus, White cannot challenge the district court's finding that the proceeds from the sale of ZINK stock were forfeitable to the United States; she can make her claim of ownership and priority of interest only in relation to the government and any other petitioners. See Moser, 586 F.3d at 1095.[6]

B.

White next contends that she has standing to contest the forfeiture of the ZINK stock proceeds. "Standing in forfeiture cases has 'both constitutional and statutory aspects.'" United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007) (quoting United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003) (hereinafter Mass Millions Lottery Ticket)). To establish constitutional standing, "a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property . . . ." Id. (quoting Mass Millions Lottery Ticket, 326 F.3d at 41). An ownership interest sufficient for Article III standing "can be shown by actual possession, control, title, and financial stake." United States v. Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minn., 294 F.3d 954, 956 (8th Cir. 2002). Statutory standing under § 853(n) requires that White demonstrate a legal interest in the proceeds of the ZINK stock. Timley, 507 F.3d at 1129, 1130 n.2.

---

[6]We have considered and reject as inapposite, United States v. Farley, 919 F.Supp. 276 (S.D. Ohio 1996), which White cites for the proposition that she can challenge the factual basis of the forfeiture.

"Because a legal interest is required to bring a claim under 21 U.S.C. § 853(n)(2), a court must first look to the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest." Id. at 1129-30 (citing United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003)). White claims both a contractual and a marital interest in the stock. We therefore look to Minnesota state law to determine whether White has a valid legal interest in the ZINK stock proceeds.[7] "If the claimant has no interest under state law, the inquiry ends, and the claim fails for lack of standing." Timley, 507 F.3d at 1130.

i.

We turn first to whether White has a legal interest in the stock proceeds under Minnesota contract law.[8] White contends that she entered into a binding oral contract with Defendant for half the increased value of the ZINK stock in exchange for her work as a marketing consultant. Oral contracts are valid and enforceable under Minnesota law. Mages v. Johanns, 431 F.3d 1132, 1141-42 (8th Cir. 2005) (citing McArdle v. Williams, 258 N.W. 818, 820 (Minn. 1935)). Accepting the facts set forth in White's amended petition as true, we assume that Defendant promised her "a 50% share in the increased value of his ZINK shares of stock." Supplemental Aff. of Robyn White 3.[9]

---

[7]Only the proceeds of the sale of the stock were forfeited to the United States government, not the stock itself.

[8]White also claimed an interest in the stock proceeds based on promissory estoppel. Promissory estoppel is an equitable claim under Minnesota law, Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995), and thus does not give rise to a legal interest under § 853. Timley, 507 F.3d at 1129 (defining "legal interest" to exclude equitable rights). White has abandoned her claim of "an interest similar to quantum meruit."

[9]White's claim that Defendant promised to pay her half the increased value of his ZINK stock was not reflected in her first petition. The district court noted this

Under Minnesota law, "[t]he formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." Commercial Assocs., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Parties to a contract must "agree with reasonable certainty about the same thing and on the same terms." Peters v. Mut. Benefit Life Ins. Co., 420 N.W.2d 908, 914 (Minn. Ct. App. 1988); see also Minneapolis Cablesystems v. City of Minneapolis, 299 N.W.2d 121, 122 (Minn. 1980) (There must be a "meeting of the minds concerning [the alleged agreement's] essential elements."). "[A]n alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable." King v. Dalton Motors, Inc., 109 N.W.2d 51, 52 (Minn. 1961). Assuming all of the facts White alleged are true, White and Defendant did not enter into a valid contract.

White's petition alleges nothing more than that Defendant agreed to give her one-half the increase value in his ZINK stock in exchange for her continuing to work for the company without a salary. Importantly, no time frame or term was indicated in Defendant's alleged promise to White. One-half the increase in value of the ZINK

_____

discrepancy:

> The Court must accept as true White's assertion that Defendant made such a promise to her. Fed. R. Crim. P. 32.2(c)(1)(A). Nevertheless, the Court notes that this promise was nowhere mentioned in White's initial Petition; only after she amended her Petition did she claim that there existed such an express agreement. Courts typically look askance at belated attempts to add new or additional grounds for relief to third-party petitions. See, e.g., United States v. Soreide, 461 F.3d 1351, 1355 (11th Cir. 2006) (per curiam); United States v. Watson, 594 F. Supp.2d 961, 964 (W.D. Mich. 2008); United States v. Strube, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999). Nevertheless, the Court need not – and does not – rely upon this ground to deny White relief.

D. Ct. Order of April 19, 2011, at 7 n.5.

stock is a figure subject to price fluctuations. Accordingly, the amount Defendant promised cannot be ascertained without an agreed upon end date.[10] Similarly, the agreement between the two did not indicate a length of time or under what conditions White was to continue working for ZINK without a salary.[11] There is no way to determine from White's allegations whether she fulfilled her end of the bargain. Thus, "the terms of the purported contract are too vague and indefinite to provide a basis for ascertaining the parties' rights and obligations." Navickas v. Quilling, No. A10-145, 2010 WL 5290552, at *6 (Minn. Ct. App. 2010) (unpublished) (finding a writing that failed to "establish how and when the 'equity' would be calculated" to be unenforceable); see also Logan v. St. Jude Med., Inc., No. A04-124, 2004 WL 1925875, at *2 (Minn. Ct. App. 2004) (unpublished) (finding that a contract lacking in terms to determine the valuation of stock options, "including the exercise price, the expiration date, and the vesting date of the options[,]" was too vague to be enforceable). Because White does not have an enforceable contract under Minnesota law, she also does not have a contract-based legal interest in the proceeds of the ZINK stock.

Even if we assume that White has pled an oral contract with definite enough terms to be enforceable, she must also assert a legal interest in the forfeited property.

---

[10]White does not allege that Defendant agreed to give her half the increased value of his ZINK stock between the dates of January 2007 and October 2008 when "she was effectively ousted from her employment by the indictment of [Defendant][.]" Appellant's Br. 26.

[11]White alleges that she worked from January 2007 to September 2008 without a salary. We note that if the alleged contract could not be performed in less than one year, it was required to be reduced to a writing to be enforceable under Minnesota's statute of frauds. Minn. Stat. § 513.01; but see Eklund v. Vincent Brass and Aluminum Co., 351 N.W.2d 371, 375-76 (Minn. Ct. App. 1984) (holding that a contract for employment "so long as he performed satisfactorily" did not violate the statute of frauds where it was possible for the contract to have been fully performed within one year). White fails to allege any type of term for her alleged oral contract.

See 21 § 853(n)(2).  A valid contractual interest in a sum of money equal to one-half the increase in value of the ZINK stock is not the type of legal interest sufficient to confer standing to contest the forfeiture of the ZINK stock proceeds.  Accepting the facts alleged in the petition as true, White had an oral contract with Defendant for a sum of money equaling half the increased value of the ZINK shares of stock.  Thus, White's interest in payment is tied to the stock's value but is not actually *in* the stock or the proceeds thereof.  See 21 U.S.C. § 853(n)(2) (requiring an initial showing of a "legal interest in property which has been ordered forfeited"); see also United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997) (per curiam) (holding that in order to obtain standing a petitioner must have "an interest in a particular, specific asset").

Any breach by Defendant of the oral contract with White does not confer upon White a legal interest in the ZINK stock proceeds.  As the district court aptly noted, Defendant did not promise to transfer fifty-percent of his shares of ZINK stock to White.  D. Ct. Order of April 19, 2011, at 7.  The ZINK stock was owned by Defendant and was held in his name.  White also does not allege facts to show that she has a legal interest in the proceeds of the sale of Defendant's ZINK stock.  The sum of money owed to her, if the oral contract is deemed binding, could come from any of Defendant's assets that were not the proceeds of criminal activity.

In DSI Associates LLC v. United States, the Second Circuit held that a purchase of shares without taking a security interest therein renders the purchaser merely a general creditor of the seller.  496 F.3d 175, 184 (2d Cir. 2007).  A general creditor does not possess "an interest 'in' a 'particular, specific asset' that is, or is part of, the forfeited property," and "does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n)."  Id. (quoting Ribadeneira, 105 F.3d at 835-37).  We agree with this analysis and hold that a general creditor does not have standing to claim an interest in a particular forfeited asset.  Nowhere in White's petition, amended petition, or attached affidavits does she allege that she took a security interest in the ZINK stock or its proceeds.  Thus, even assuming the

-10-

existence of an enforceable oral contract, White's petition fails to demonstrate that she has standing to contest the forfeiture of the property based on a contractual interest in the stock proceeds.

ii.

We turn next to White's claim of a marital interest in the ZINK stock proceeds. White first contends that her marital interest is derived from Minnesota Statutes section 518.54 (now Minnesota Statutes section 518.003 subdivision 3(b)), which defines "marital property" and "nonmarital property" for purposes of marital dissolution. White also contends that the divorce decree entered in Hennepin County District Court awarding her one-half the proceeds of the ZINK stock confers standing upon her.[12] White thus uses divorce law to claim a marital interest in the stock proceeds.[13] Assuming, without deciding, that White has standing based on a marital interest in the ZINK stock proceeds, we need not reverse the district court's order denying the hearing because White could not prevail even if one were granted. See Timley, 507 F.3d at 1131.

White cannot prevail in the forfeiture proceeding unless she qualifies for relief under one of the two prongs of § 853(n)(6). She must either demonstrate priority of ownership in the forfeited property or establish that she was a bona fide purchaser for

_____

[12]Both of White's forfeiture petitions predate the divorce decree. Thus, she could not plead that the divorce decree conferred standing upon her in this forfeiture proceeding, and the district court did not consider the effect of that decree.

[13]As the district court noted, we confronted a nearly identical situation in United States v. Cochenour, 441 F.3d 599 (8th Cir. 2006). There, we held that "[d]ivorce law does not govern a spouse's claimed interest in forfeited property." Id. at 601 (citing United States v. Totaro, 345 F.3d 989, 997-98 (8th Cir. 2003)). To the extent that White's claim is arguably distinguishable from that alleged in Cochenour, her petition fails on the merits.

value of the property. 21 U.S.C. §§ 853(n)(6)(A) (superior interest), (n)(6)(B) (bona fide purchaser); Timley, 507 F.3d at 1130. White does not claim priority of ownership under § 853(n)(6)(A). She claims instead that she is a bona fide purchaser for value of the ZINK stock proceeds and thus should prevail under § 853(n)(6)(B). To qualify as a bona fide purchaser for value, White must show: "(1) . . . a legal interest in the property; (2) the interest was acquired as a bona fide purchaser for value; and (3) that the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." Timley, 507 F.3d at 1130-31.

Assuming she has a legal interest derived from her marriage to and subsequent divorce from Defendant, White was not reasonably without cause to believe that the proceeds were subject to forfeiture at the time she acquired her interest. Under Minnesota divorce law, White's rights vested, at the earliest, when she commenced the dissolution proceedings on September 20, 2010. Miller v. Miller, 352 N.W.2d 738, 743 (Minn. 1984). White knew of Defendant's criminal activity and the associated forfeiture proceedings before filing for divorce. Defendant was charged with the fraud and pled guilty on October 8, 2008. Defendant agreed in his plea agreement that all funds he received from PCI were proceeds of the fraud and subject to forfeiture. In addition, the district court had ordered the forfeiture of all of Defendant's property traceable to the fraud one week before White filed for divorce. White thus was not reasonably without cause to believe that the ZINK stock proceeds were subject to forfeiture at the time she filed for divorce. Accordingly, White cannot prevail under § 853(n)(6)(B) even if she has a marital interest in the proceeds.

III.

Because White has not alleged a legal interest in the ZINK stock proceeds, she lacks standing to maintain this action. To the extent that White has alleged a legal interest in the stock proceeds based on a marital interest, her petition fails on the

merits.  Accordingly, the district court's judgment dismissing the petition and amended petition is affirmed.

_____