UNITED STATES of America,
Plaintiff,

v.

$579,475.00 IN U.S. CURRENCY,
Defendant

LNG Express, Inc., Claimant.

No. 4:15CV00082 SWW

United States District Court,
E.D. Arkansas, Western Division.

Signed July 21, 2016

Cameron Charles McCree, U.S. Attorney's Office, Little Rock, AR, for Plaintiff.

William Scott Murphy, Murphy Peluso, LLC, West New York, NY, for Claimant.

## Opinion and Order

Susan Webber Wright, UNITED STATES DISTRICT JUDGE

This is an *in rem* action brought by the United States of America under 21 U.S.C. § 881(a)(6) seeking forfeiture of $579,475.00 in United States currency. LNG Express, Inc. ("LNG") filed a claim to the currency. The United States moved to strike LNG's claim and its answers to certain discovery requests. Claimant LNG responded to the motion. For the reasons stated below, the Court grants the motion to strike.

## Background

According to the complaint filed by the government on February 9, 2015, Defendant Currency was seized from Yu Lin Yuan following a traffic stop on Interstate 40 in Faulkner County, Arkansas. On September 24, 2014, an Arkansas State Trooper, Corporal Chris Goodman, pulled over a tractor truck that was being driven by Yuan after the truck swerved onto the right shoulder. Corporal Goodman made contact with Yuan and observed him and the inside of the vehicle. According to Goodman, Yuan was very nervous, moving around erratically, shaking, and talking fast. While talking to Yuan, Goodman noticed the co-driver, Weiyi Liu, sitting in the sleeper area. Mr. Liu was awake and also appeared to be nervous: he looked startled and was shaking.

Corporal Goodman requested the drivers's log book, bills of lading, and driver's licenses. He noticed that Yuan and Liu had taken over two weeks off in New York prior to their trip and that their destination was Stockton, California. The complaint alleges that Stockton is known to law enforcement as a source area for high-grade marijuana. He also thought it was strange that Yuan, who said he had been working for the company for two months, had taken a two-week vacation in New York. Mr. Yuan said he did not know his boss's name, exited the truck, responded that there were no guns, drugs, or large amounts of cash in the truck, and gave Goodman permission to search the truck. Corporal Goodman also asked Liu to exit the truck. Corporal Goodman found a large cardboard box on top of the bottom bed in the cab. It was taped shut with several strips of packing tape. He opened the box and found part of the Defendant Currency. It was packaged in large bundles, divided by rubber bands, and hidden behind a layer of Chinese newspapers. The complaint alleges Goodman noticed Yuan and Liu talking while he was conducting the search and asked Yuan to go sit in the police car. While in the car, Goodman asked Yuan if he was carrying more than $10,000.00 and Yuan denied having that much currency. Corporal Goodman then questioned Liu in the police car and Liu denied that the money was his.

After interviewing Yuan and Liu, Goodman and other officers returned to the truck to continue the search. They found another box in front of the original cardboard box, hidden under a shirt on the bed. It was full of money, separated in bundles with rubber bands. After being driven to the Faulkner County Prosecutor's Office, Yuan and Liu signed disclaimer forms, affirming their statements to Goodman that the money did not belong to them. They were both released pending further investigation. A K-9 was led around the boxes and the dog alerted to the presence of narcotics on the boxes. Law enforcement officers took the money to a bank where it was counted and determined to amount to $579,475.00.

On August 12, 2015, LNG filed an affidavit, claiming interest in and a right to the currency.[1] On September 2, 2015, LNG

1. Docket entry no. 4.

filed an answer and counterclaim.[2] On October 5, 2015, the government served LNG with a set of seventeen special interrogatories. Claimant LNG submitted responses to the interrogatories on October 30, 2015. The government asked LNG to supplement its responses and LNG twice amended its responses to the special interrogatories.[3]

Claimant LNG is a trucking business incorporated in New York in June 2014. The company has two officers, President Yanna Liang and General Manager Zhuo Nong Li. Mr. Liang also serves as the company's sole director. Mr. Li served as LNG's corporate representative on its answers to the special interrogatories. LNG responded that Defendant Currency constitutes its operating capital. LNG claimed $400,000.00 of the money came from an undocumented loan in February 2014 made to LNG by a Chinese company owned by Li's nephew. The remaining amount, $179,475.00, allegedly was derived from Liang and Li's personal savings. LNG refused to answer how the loan money came into the country from China, who delivered it to the company, whether the money was declared when it came into the country, how much of the personal savings money came from Li and how much came from Liang, or when the monies were earned and delivered to LNG.

After reviewing LNG's answers, the government moved pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture to strike the company's claim for failure to comply with Supplemental Rule G(5). The government also moved to strike LNG's answers to special interrogatories 4, 6, and 8 because the company asserted Li and Liang's Fifth Amendment privilege to refuse to fully answer those interrogatories. In response, LNG asserted it provided sufficient information to establish standing, that the special interrogatories inquired beyond the scope permitted by the Supplemental Rules, and the assertion of the Fifth Amendment should have no bearing on the determination of standing because the inquiry that resulted in the assertion of the privilege was beyond the scope permitted at this stage of the case.

### Discussion

Standing, the issue of whether one is entitled to pursue a claim, is an issue in every civil forfeiture lawsuit. *United States v. 392 Lexington Parkway South*, 386 F.Supp.2d 1062, 1067 (D.Minn.2005)(quoting *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir.2003)). "A forfeiture claimant must satisfy both constitutional and statutory standing requirements to file a verified claim properly." *United States v. Eleven Million Seventy–One Thousand One Hundred and Eighty–Eight Dollar and Sixty Four Cents ($11,071,188.64) in U.S. Currency*, No. 4:12cv1559 CEJ, 2014 WL 301014, at *1 (E.D.Mo. Jan. 28, 2014)(quoting *United States v. ADT Sec. Servs., Inc.*, 522 Fed.Appx. 480, 489 (11th Cir.2013)). "To establish constitutional standing, 'a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property....' An ownership interest sufficient for Article III standing 'can be shown by actual possession, control, title, and financial stake.' Statutory standing under § 853(n) requires that [a claimant]

---

**2.** Docket entry no. 5. Claimant LNG later withdrew its counterclaim. Docket entry no. 6.

**3.** Docket entries nos. 7-3, 7-4, 7-5 and 7-8.

demonstrate a legal interest in the [seized property]." *United States v. White*, 675 F.3d 1073, 1078 (8th Cir.2012)(internal citations omitted).

■ LNG's Verified Notice of Claim states in pertinent part: "Claimant has a claim to, interest in, and right to the property seized herein, specifically the defendant-in-rem, $579,475.00 in United States Currency and demands its restitution and return."[4] Pursuant to Supplemental Rule G(6), the government propounded special interrogatories to gather additional information bearing on LNG's standing.[5] Because LNG failed to fully address the questions raised and asserted the Fifth Amendment privilege for its officers, the government moved, under Supplemental Rule G(8)(c), to strike LNG's claim for failing to comply with Supplemental Rule G(5).

■ According to Supplemental Rule G(8)(c)(ii)(B), a motion to strike may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment. The government urges the Court to grant judgment on the pleadings. Judgment on the pleadings is appropriate under Federal Rule of Civil Procedure 12(c) when there are no material issues of fact to be resolved and the movant is entitled to judgment as a matter of law. *Faibisch v. University of Minn.*, 304 F.3d 797, 803 (8th Cir.2002). When analyzing a motion for judgment on the pleadings, all facts pleaded by the non-moving party are accepted as true and all reasonable inferences from the pleadings are granted in favor of the non-moving party. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir.2004).

In its Verified Notice of Claim, LNG says only that it "has a claim to, interest in, and right to" the seized currency . . ."[6] Clearly, that assertion is insufficient to meet the pleading requirements of Rule G(5). The Court further finds that LNG's assertion of its corporate officers' Fifth Amendment privilege to refuse to provide verifiable information about its alleged interest in the Defendant Currency is prejudicial to the government's ability to investigate the facts behind LNG's claim of ownership. LNG cannot be allowed to provide only partial, non-verifiable information to support its standing and to assert the Fifth Amendment to prohibit further investigation into its assertions. Because LNG fails to allege facts sufficient to establish standing, the Court grants the government's motion to strike its claim.

### Conclusion

IT IS THEREFORE ORDERED that the government's motion to strike [ECF No. 7] is granted. The Court hereby strikes LNG's ownership claim.

---

4. Docket entry no. 4.

5. *See* Supplemental Rule G advisory committee's note, Subdivision (6).

6. Docket entry no. 4, ¶ 1.